AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

United States of America

v.

RAYMOND HARDY,
HAKEEM MILLER,
JAHBRI SHELTON,

*Defendants*

Case No. 20-MJ-754

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about and between the month of June 2020 and July 3, 2020, in the City of Rochester, in the Western District of New York, the defendants, Raymond HARDY, Hakeem MILLER, and Jahbri SHELTON violated Title 18, United States Code, Sections 922(a)(1)(A), 2 (Unlawful Dealing of Firearms), and 371 (Conspiracy to Commit Offenses Against the United States).

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

*Complainant's signature*

Special Agent Jason Haugh,
Bureau of Alcohol, Tobacco, Firearms, and Explosives

*Printed name and title*

Affidavit and Criminal Complaint submitted electronically via email in .pdf form. Oath administered, and contents and signature attested to me as true and accurate telephonically pursuant to Fed.R.Crim.P. 4.1 and 4(d) on:

Date: October __21__, 2020

City and State: Rochester, New York

*Judge's signature*
HONORABLE MARK W. PEDERSEN
UNITED STATES MAGISTRATE JUDGE

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

20-MJ-754

RAYMOND HARDY,
HAKEEM MILLER,
JAHBRI SHELTON,

Defendants.

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK )
COUNTY OF MONROE ) SS:
CITY OF ROCHESTER )

I, Jason J. Haugh, Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, having been duly sworn, states as follows:

### INTRODUCTION AND BACKGROUND

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and as such I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code, as well as other offenses against the United States of America.

1

2. I have been employed as a Special Agent with ATF since January of 2015 and I am currently assigned to the ATF New York Field Division. I was enlisted in the Marine Corps from October of 2004 to October of 2008 and was a member of an elite Marine Corps Reconnaissance team. I have attended the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training regarding the investigation of violations of Federal firearms, arson, and explosives laws. During my time with ATF, I have investigated and participated in cases involving persons that have violated Federal firearms and narcotics laws, including firearms and narcotic traffickers, and persons that are prohibited from possessing firearms. In conducting these investigations, I have used a variety of investigative techniques and resources, including physical and electronic surveillance, monitoring court-authorized wiretaps, the use of confidential human sources (CHSs) and informants ("CIs"). I further state that I am the kind of Special Agent as delineated in Title 18, United States Code, Section 3051.

3. Based on my training and experience as an ATF Special Agent, I am familiar with the manner in which firearm traffickers conduct their firearm trafficking business, including the methods employed by firearm traffickers to sell firearms while avoiding detection by law enforcement, their use of telephones in furtherance of their illegal activities, and their use of coded language to refer to firearms, firearm proceeds, and other aspects of firearm trafficking.

4. This affidavit is submitted in support of a criminal complaint charging Raymond Hardy (hereinafter "HARDY"), Hakeem Miller (hereinafter "MILLER"), and Jahbri Shelton (hereinafter "SHELTON") with violations of Title 18, United States Code, Sections 922(a)(1)(A), 2 (Unlawful Dealing of Firearms), and 371 (Conspiracy to Commit Offenses Against the United States, that is, Conspiracy to Unlawfully Deal in Firearms).

5. The assertions made herein are based upon my personal knowledge or upon information and belief, the source of which is my review of reports and documents created in connection with this investigation; conversations with other law enforcement agents; my analysis of records and review of video/audio recordings pertinent to this case; information received from confidential sources; and my training and experience. I am familiar with all aspects of this investigation as I have been involved in this matter since its inception. This affidavit is being submitted for the limited purpose of establishing probable cause that Raymond HARDY, Hakeem MILLER, and Jahbri SHELTON have violated the above described offenses. As such, this affidavit does not include each and every fact known to me concerning this investigation.

## PROBABLE CAUSE

6. As discussed in greater detail below, ATF has been investigating the firearms trafficking activities of Raymond HARDY, Hakeem MILLER Jahbri SHELTON. Based on my training and experience, as well as my knowledge of this investigation, I believe these individuals are trafficking a large number of firearms from the State of Mississippi to Rochester, New York which they then sell in exchange for United States currency.

### First Controlled-Buy

7. In May 2020, an ATF Confidential source (hereinafter "CS-1")[1] began communicating with an unknown male on Facebook who was using the moniker "Zilla Cain." CS-1 was introduced or directed by others to "Zilla Cain," as a person known to sell firearms. As will be further described in the paragraphs that follow, "Zilla Cain" was ultimately identified as Raymond HARDY.

8. In the middle of June 2020, CS-1 exchanged numerous text messages with HARDY (who was utilizing telephone number (585) 664-5422). In sum and substance, CS-1 made arrangements to purchase firearms from HARDY in exchange for United States currency. Also in June, HARDY informed CS-1 that he and his people were on their way to Rochester to sell firearms, to which CS-1 indicated that he/she was ready to purchase guns from HARDY. HARDY sent CS-1 prices for the firearms he was bringing up, and wrote that he was charging $1,500 United States currency for Glock firearms and $2,300 for "Dracos" (which are smaller AK style firearms). HARDY advised CS-1 that he could offer better prices for buyers that paid HARDY before he and his group made their trips to Rochester.

---

[1] The specific dates and times CS-1 interacted with the Targets of this investigation are concealed so as to protect the identity of CS-1. It should be noted that CS-1 has been arrested approximately 8 times and has 5 criminal convictions: one felony and four misdemeanor convictions. To date, ATF has paid CS-1 a total of approximately $10,400 in exchange for his/her assistance in this investigation. CS-1 has provided ATF with information that has been proven reliable in the past and that has resulted in the recovery of narcotics, firearms, and ammunition. Information provided to law enforcement by CS-1 has been further corroborated by recorded conversations and controlled purchases of firearms and narcotics in both this particular investigation and others.

9.      On this same date in June 2020, CS-1 was also in communication with an individual by the name of Jahbri SHELTON, who had provided his cellular phone number to CS-1 as (585)673-6687 (hereafter "Phone 2"). It should be noted that when SHELTON was arrested on July 3, 2020, he identified his phone that was collected at or about the time of his arrest, and stated that his phone number was (585)673-6687. During the afternoon on this date in June, CS-1 received a phone call from SHELTON (Phone 2). During this phone call SHELTON told CS-1 that he would be obtaining a "G-19" in the near future. Based on my training and experience, which includes the full context of this conversation, as well as my subsequent conversation with CS-1, that SHELTON was telling CS-1 that he had a Glock 19 available to sell CS-1. The investigation revealed that there was an affiliation between the firearms trafficking activities of SHELTON and HARDY/MILLER. During this conversation with CS-1, SHELTON indicated that HARDY and possibly other Mississippi traffickers had nearly arrived in Rochester.

10.     Once HARDY arrived in Rochester, HARDY advised CS-1 that he was on the East side of the City, on Jewel Street. HARDY advised CS-1 that a lot of people were coming to buy firearms from him and his group and that CS-1 should come to Jewel Street quickly, before others purchased HARDY's entire selection.

11.     Later on the same date in June, CS-1 was fitted with an audio/video recorder and transmitter. CS-1 was also searched for contraband, with negative results, and provided with a sum of several thousand dollars of United States currency. CS-1 arrived in the area of 72 Jewel Street, Rochester, New York and was led to backyard area where a tent had been

set up. HARDY and others allowed CS-1 into the tent where firearms were displayed to CS-1. After negotiating a price CS-1 paid HARDY a sum of United States currency in exchange for three firearms and ammunition. The exact make, model and serial number of these firearms are being withheld to protect the identity of CS-1. After this controlled buy, CS-1 met up with agents at a predetermined location, turned over the firearms, ammunition and recording device, and was debriefed in regard to the transaction.

### Second Controlled-Buy

12.   CS-1 and HARDY continued to communicate via text message during June 2020. A second transaction was arranged for a later date in June 2020. Prior to the transaction HARDY directed CS-1 to meet him at 72 Jewel Street, Rochester, New York. Prior to this transaction agents searched CS-1 for contraband with negative results, and provided CS-1 with a recording device and a sum of United States Currency. CS-1 traveled to the area of 72 Jewel Street, Rochester, New York where CS-1 was met by HARDY, and another individual later identified as HAKEEM MILLER. CS-1 paid HARDY a sum of United States Currency in exchange for three additional firearms during this meeting. CS-1 advised that the person later identified as MILLER handed HARDY a handgun, who then handed the gun to CS-1. Thereafter, CS-1 handed HARDY a sum of United States currency, which he then handed to MILLER. Shortly thereafter, MILLER provided the other two firearms to CS-1 to complete the transaction. After the controlled-buy was completed, CS-1 left the area and met up with agents at a predetermined location. CS-1 provided agents with the three firearms, the recording device, and was debriefed in regard to the controlled-buy.

13. On June 25, 2020 your affiant spoke with ATF NEXUS expert / ATF Senior Special Agent Ryan Szwejbka, and provided a description of the firearms purchased from HARDY during the First Controlled-Buy and HARDY/MILLER during the Second Controlled-Buy described in the preceding paragraphs. Agent Szwejbka advised me that none of these firearms were manufactured in the State of New York and consequently would have affected interstate commerce.

14. On June 25, 2020, I requested that ATF Officials review the Federal Firearms Licensee (FFL) and Firearms Manufacturers databases. ATF Inspectors advised me that Raymond HARDY, Hakeem Miller and Jahbri SHELTON do not, and have not held an FFL or a license to manufacture or deal in firearms.

15. During all of the above described text message and phone conversations, HARDY utilized Phone 1 and SHELTON utilized Phone 2.

**Arrest and Interviews**

16. During the week of July 1, 2020, I learned that HARDY, MILLER, and other members of this firearms trafficking group had made plans to return to Rochester, from the State of Mississippi, for the purpose of selling additional firearms. On July 3, 2020 surveillance teams consisting of members of the Rochester Police Department as well as Special Agents from the ATF Rochester and Buffalo New York field offices did observe HARDY, MILLER and a third individual later identified as Jahbri SHELTON, travelling in a silver 2012 Nissan Altima, bearing the State of Mississippi Registration WRC-9346. This vehicle was followed from the Buffalo, New York area to the Rochester, New York where it

was subsequently stopped by law enforcement at the corner of Portland Avenue and Bay Street. All three occupants of the vehicle were removed without incident and the vehicle was held while other members of the investigative team sought a search warrant for the vehicle.

17. Based upon the recent controlled-purchases of firearms from HARDY and MILLER, combined with other knowledge learned through the course of the investigation, a search warrant was sought and obtained from the Hon. Douglas A. Randall, Monroe County Court Judge.

18. Once the warrant was obtained, the 2012 Nissan Altima was searched by ATF Task Force Officer Joseph Briganti and the following six (6) firearms were recovered:

   a. One (1) Kel-Tec, 22 caliber semi-automatic handgun model CP33 serial number M4E30;

   b. One (1) Ruger, 9mm semi-automatic, model SR9C serial number 336-53179;

   c. One (1) Smith and Wesson, 40 caliber semi-automatic handgun, model SD40VE serial number FWR-2776;

   d. One (1) Taurus, 9mm semi-automatic handgun, model #G2C serial number TL421231;

   e. Two (2) Stoeger, 9mm, semi-automatic, model STR-9 serial number T6429-20405074 and serial number T642920402081; and

   f. One (1) American Tactical, Omni Hybrid 223/556 caliber rifle serial number NS245218, which had been reported stolen by the Greenville Mississippi Police Department on or about April 8, 2020.

19.     Subsequent to the arrest of HARDY, SHELTON and MILLER, your affiant spoke with ATF NEXUS expert / ATF Senior Special Agent Ryan Szwejbka, and provided a description of the firearms recovered from the Silver Nissan on July 3, 2020. Agent Szwejbka advised me that none of the firearms described in sub-paragraphs 34(a) through 34(f) were manufactured in the State of New York and consequently would have affected interstate commerce. Agent Szwejbka believes that the firearm described in 34(g), the American Tactical, was also likely manufactured outside of the State of New York, but will need to inspect that firearm further before he can be certain.

20.     Following the arrest of HARDY, MILLER, and SHELTON on July 3, 2020, all subjects were taken to RPD's Public Safety Building and interviewed. All interviews were audio/video recorded. All three subjects were advised of their *Miranda* rights prior to questioning and all three agreed to waive their rights. Three cellular phones were recovered from the silver Nissan Altima described above. Each defendant identified their respective phone and provided their phone number. HARDY identified Phone 1 as belonging to him with phone number (585)664-5422. SHELTON identified Phone 2 as his own and advised that his phone number was (585)673-6687. MILLER identified Phone 3 as his own with phone number (585)439-0835. The following are brief summations of pertinent parts of each subject's interview.

21. HARDY initially denied knowledge of any firearms found within the Nissan. As the interview progressed he admitted to obtaining firearms in Mississippi which he then brought to Rochester to sell for profit. HARDY explained that he would make approximately $700-$1,500 during these trips to Rochester. HARDY explained that MILLER (Phone 3) would coordinate with MILLER's father (whose initials are R.Y.) to finance the purchase of firearms in Mississippi, which the group would then sell in Rochester. HARDY indicated that R.Y. was one of their biggest customers.

22. MILLER initially denied knowledge of any firearms that were recovered in the silver Nissan. As the interview progressed, MILLER explained to law enforcement that he has sold many firearms in Mississippi. MILLER also explained that he had brought numerous firearms that he purchased in Mississippi to Rochester to sell for profit. MILLER advised law enforcement that he would have made a profit of approximately $7,000 on the firearms that were seized from the silver Nissan on July 3, 2020. MILLER advised agents that the majority of the firearms he sold in Rochester went to a person he identified as "TJ." MILLER denied any firearm's trafficking connection with his father R.Y.

23. SHELTON initially denied knowledge of any firearms in the silver Nissan. As the interview progressed he admitted that he sends money down to HARDY and MILLER which they use to purchase and sell firearms in Rochester. SHELTON told investigators that he did this to make a profit off of the firearms he helped pay for. SHELTON advised agents

that R.Y. frequently contacts MILLER via cell phone about bringing guns up to sell in Rochester.

## CONCLUSION

24. Based upon the foregoing, I submit that there is probable cause to believe that on or about and between June 2020 and July 3, 2020, in the City of Rochester, in the Western District of New York, the defendants, Raymond HARDY, Hakeem MILLER, and Jahbri SHELTON violated Title 18, United States Code, Sections 922(a)(1)(A), 2 (Unlawful Dealing of Firearms) and 371 (Conspiracy to Commit Offenses Against the United States, that is, Conspiracy to Unlawfully Deal in Firearms).

_____
JASON J. HAUGH
Special Agent,
Bureau of Alcohol, Tobacco, Firearms
And Explosives

Affidavit and Criminal Complaint Submitted electronically
by email in .pdf format. Oath administered, and contents
and signature, attested to me as true and accurate
telephonically pursuant to Fed.R.Crim.P. 4.1 and 4(d)
on October 21, 2020.

_____
HON. MARK W. PEDERSEN
United States Magistrate Judge